UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                  CASE NO. 04-80642

v.                                                PAUL D. BORMAN
                                                      UNITED STATES DISTRICT JUDGE

TARY HOLCOMB et. al.,

       Defendant,
_____/

OPINION AND ORDER DENYING MOTIONS TO SUPPRESS FILED BY
D5 – WILLIAM WORTHY
D8 – CEDRIC HARDEMAN
D9 – RODNEY PURYEAR[*]

BACKGROUND

      Defendants Worthy, Hardeman and Puryear filed Motions to Suppress evidence seized from themselves and their cars pursuant to a Federal/State task force stake out of a residence believed to be the location for marijuana distribution, and the agents' subsequent car stops of individual defendants who backed up the driveway to the residence's garage, and shortly thereafter drove away from the residence.

      On March 14, 2005, the Court held an evidentiary hearing. At the conclusion of the hearing, the Court invited supplemental briefing from the parties. On March 31, 2005, the Government filed a Supplemental Response; on April 15, 2005, Defendant Holcomb filed a

---

[*] Defendant Mario Jacobo's Motion to Suppress deals with a different factual scenario. That motion will be dealt with in a separate opinion and order.

1

Supplemental Response.

The Court finds that the information in possession of the Government provided the necessary probable cause to support its actions stopping cars and seizing marijuana on November 10, 2004.

DISCUSSION

The Government presented testimony at the evidentiary hearing on March 14, 2005, of an investigation that was initiated as a result of information from two sources. Thereafter, the Government investigation, was carried out by wiretap, by investigation, and then by surveillance that corroborated incriminatory aspects of the wiretaps and investigation. Significant corroboration of drug distribution occurred as a result of the agent's first vehicle stop on November 10, 2004 that did not involve the instant three Defendants. That vehicle, which was driven by co-Defendant Antonio Curry was justified by the car speeding 85 m.p.h. after departing from the Plainview address driveway, which Curry had backed up to facilitate hiding the vehicle. That stop/seizure produced a large load of marijuana. At that point the agents, who continued their surveillance of the Plainview address, had very strong probable cause to continue their stops of cars that were backing up the driveway, and then quickly leaving the Plainview residence.

The Government called two witnesses to testify at the evidentiary hearing, Sgt. Gregory Yon and DEA Special Agent Russ Roel. The content of these witnesses' testimony is set forth below.

Sgt. Gregory Yon, a DEA task force agent employed by the Livonia Police Department testified to a compilation of activity in the possession of law enforcement when the seizures took

place on November 10, 2004. The Government had been investigating the transporting of marijuana from Tucson, Arizona, to Detroit based on information from two sources who had been debriefed. (March 14, 2005 Hearing, Yon testimony P.11).

The Government had secured a Title III wiretap authorization for phone number (313) 999-1278, which was used by Defendant Tary Holcomb, but owned by Defendant Cedric Hardeman. Pursuant to the October 17, 2003 wiretap authorization, the Government secured pertinent information, prior to the first arrest on November 10, 2003, to wit:

> October 23, 2003 – calls from Defendant Holcomb to co-Defendant Kenneth Shumpert who was giving directions to an unknown person to come to his residence on Woodmont to complete a drug transaction. (Yon, P.12)

Thereafter, the agents surveilled the 7450 Woodmont residence and saw co-Defendant Shumpert arrive, go into the house, return to his car 10 minutes later and leave. The agents had Troy police perform a traffic stop that resulted in the recovery of over one pound of marijuana. Tr. P.14.

Further information confirmed by the task force prior to arresting the parties to this Motion to Suppress, was that around November 3, 2003, Defendant Holcomb had flown to Arizona for about one week, and during that period, received wire communications which the agents concluded, sounded like a drug transaction being put together, i.e. talking about money, and a few subject individuals, including Defendant Daniel Sanchez. (Yon, Tr. P.15) In addition, the agents secured telephone cell-site information from cell towers that placed the Detroit-numbered cell phone's presence in Phoenix, Arizona. (Yon, Tr. Pp. 15-16)

The agents also had information, prior to November 10, 2003, that Defendant Cortney Allen had a registered address on Plumridge in Southfield, and also another address at 8401

3

Plainview in Detroit. (Yon, Tr. P.16). Based on this information, the agents surveilled the Plainview residence to confirm its location and activity there.

In addition, the agents had determined that Defendant Holcomb had purchased a silver Cadillac Escalade SUV prior to going to Arizona, and the agents saw Holcomb drive it on November 9, 2003, from the Woodmont address to Defendant Hardeman's address on Corbett Street in Detroit. (Yon, Tr. P.18).

The Agents had also determined by surveillance that Defendant Hardeman had a silver green Dodge Intrepid at his residence. (Yon, Tr. P.18).

The Agents had also determined that Defendant William Worthy owned a white Cadillac, that was seen being driven by Defendant Allen in June, 2003. (Yon, Tr. P.19).

Based on the conversations in Arizona, additional overhears on November 10, 2003, and facts contained in the testimony of the second law enforcement agent at the instant hearing, noted *infra*, the agents, based on the facts and their experience, believed that a load of marijuana was coming to Detroit.

Significantly, the November 10, 2003 telephone overhears by FBI Special Agent Jesse Lopez, prior to any law enforcement activity directed toward the seizure of the instant Defendants, included calls beginning in the early morning, 9 a.m., in surreptitious coded language, speaking about going over to "the View", or the 8401 Plainview address. One monitored conversation was of an individual giving directions towards the Plainview address. The agents then proceeded to surveil that address. The intercepted phone communications testified to, were transcribed on "line sheets", to be discussed, *infra*.

The agents, upon arriving at 8401 Plainview about 11:30 a.m., saw Holcomb's Cadillac

Escalade parked in front of the house, and a black Chevy Silverado truck backed up into the driveway with its rear end facing the garage, with the wooden driveway gate opened to facilitate entrance into the driveway. (Yon, Tr. P.23)

When the Chevy Silverado left, agents followed it for a distance onto the freeway, determined that it was traveling at speeds of approximately 85 miles an hour, in violation of the law, and stopped the truck for the speeding violation. This was proper under *Whren v. United States*, 116 S.Ct. 1769 (1996). A search of the Silverado revealed the driver to be co-Defendant Antonio Curry, and further revealed the smell of burning marijuana inside the vehicle, a small bag of marijuana in Mr. Curry's pocket, three black garbage bags filled with marijuana in the bed of the truck, and two plane ticket stubs for Mr. Curry, for a flight to Phoenix, Arizona, on November 4, 2003, and back to Detroit on November 8, 2003. (Yon, Tr. Pp. 25-26)

Given the finding of marijuana in Mr. Curry's possession, there was probable cause to arrest him and search the vehicle. Given the results of the search, combined with the previous scenario at the Plainview address and the phone conversations discussed *infra*, there was probable cause to believe that marijuana was being distributed from the Plainview address to which Curry had backed up his truck.

Continued Agent surveillance at the Plainview house revealed a grayish blue Cadillac and a green mini-van, the latter being driven by co-Defendant William Worthy.

The agents also saw a silver Dodge Intrepid, registered to co-Defendant Cedric Hardeman, driven by him, arrive at the Plainview address. Defendant Hardeman went into the house, exited, backed the car up the driveway to the garage, and left a short time later. The Hardeman Dodge was stopped at agents' directions, and in searching the car, agents found a

black garbage bag containing approximately 40 pounds of marijuana. (Yon, Tr. P.37) Given the prior facts – the wiretaps, the activity at the house, the seizure of marijuana from Curry, and Hardeman's backing up the driveway, there was probable cause to stop and search his vehicle.

Agents at the Plainview address, next saw an Oldsmobile Delta 88, driven by co-Defendant Puryear, back up the driveway, with the guiding assistance of Defendant Worthy. (Yon Tr. P.39) Puryear's vehicle soon left, was stopped, searched, and a black garbage bag contained approximately 40 pounds of marijuana was recovered from the truck. (Yon, Pp. 40-41) For the aforestated reasons there was probable cause to search Mr. Puryear's car, seize the marijuana, and then arrest him.

Next, agents at the Plainview address saw the blue Cadillac, that had been parked in front, back up the driveway and then leave. That car was not followed due to the lack of available agents.

When Defendant Worthy, who remained at the house, locked up the house with a key, and departed in his green mini-van, he was stopped. Worthy had been present during most of the transactions, and appearing to be directing the marijuana distribution operation. Worthy was found to posses a semi-automatic pistol. (Yon, Tr. P.43) In addition, a canine smell of his car produced an indication of narcotics, although none was found. (Yon, Tr. P.44) The Court finds that under the totality of circumstances, there was probable cause to stop Mr. Worthy and seize his gun. See *Illinois v. Gates*, 462 U.S. 213 (1983).

As to Defendant Hardeman, he was stopped because of the finding of marijuana in Mr. Curry's truck, and based on the intercepted phone conversations between him and Mr. Holcomb.

The Government's second witness, DEA Special Agent Ross Roel testified that he had

received the following information on the morning of November 10, 2003, from Special Agent Jesse Lopez who was monitoring the aforementioned phone number pursuant to the Title III wiretap authorization:

> Tary Holcomb was meeting with other individuals at the Plainview address. He had been given directions to "C's house," Courtney Allen's house, on the "View". The terminology used the term "View", and gave the specific intersection of Joy and Evergreen. (Roel testimony Pp. 50-51)

S.A. Roel testified that after receiving the wiretap information, he established surveillance at the 8401 Plainview address at approximately 11:30 a.m., observing Tary Holcomb's silver Cadillac Escalade parked in front of the house, saw the black Chevrolet Silverado backed into the driveway, saw the Escalade leave at 11:45 a.m. and then the Silverado leave at 11:55 a.m. (Tr. P.54) Roel followed the Silverado at speeds up to 85 M.P.H., had it stopped and found Defendant Antonio Curry driving, and Cortney Lewis as the passenger.

Roel was provided the "line sheets", which summarized the monitored phone conversations by the task force. He testified as to the following pertinent overheard conversations on November 10, 2003:

> 1. 9:55 a.m. – Defendant Holcomb speaks with Defendant Worthy, requesting to meet on the View.
> 2. 10:00 a.m. – Holcomb speaks with Worthy – is the computer close. S.A. Roel believes "computer" is code for marijuana (Roel, Tr. Pp. 57-58). Further background in support of this conclusion as to the term computer/marijuana is the knowledge that Holcomb was in Arizona the prior week, and reviewing the conversations, it appears as a marijuana transaction is being put together where marijuana would be transported from Arizona to Detroit for distribution.
> 3. 10:23 a.m. – Holcomb speaks with an unknown male telling him to get on his way, and call Holcomb when he gets close.
> 4. 10:50 a.m. – Holcomb and unknown male; Holcomb asks if he knows where C, code for Defendant Cortney Allen stays – that

7

   being the home on 8401 Plainview.
5. 10:56 a.m. – Holcomb and unknown male, who says he's sitting outside the "crib", asking where to park. Holcomb says park on the side.
6. 11:29 – Holcomb talks with Defendant Worthy; Holcomb complains that there was only 138, not the expected 200; the conversation speaks about 8 CDs being only 138. S.A. Roel interprets this as code for pounds of marijuana; that the garbage bags of marijuana were supposed to be 8 bags each of 25 pounds, equaling 200 pounds, but instead defendant only received 138 pounds. (Tr. P.60) The net lab weight of the marijuana seized that day added up to 120 pounds.
7. 11:30 a.m. – Holcomb speaks with Defendant Hardeman, says Holcomb will drop off his car at his house, and ride back with Hardeman. (Tr. P.60)
8. 11:50 a.m. – Holcomb talks to Mary Hardeman, believed to be Cedric's wife; Holcomb says he's on his way but still on the west side. Holcomb's location is 8401 Plainview on the west side; Hardeman's residence is on the east side.
9. 12:11 p.m. – Holcomb and unknown male re what's Holcomb's address. Holcomb says, "see a man in between about 11-5, $12, about 11-5." Agent interprets this to be code about the price per pound of marijuana – $1150-$1200, based on that being Holcomb's response to the caller's question "what's your address." (Tr. P.61) Also based on Agent's experience, traffickers use coded language to discuss drugs and the price. Finally, it doesn't make sense to respond between 11-5 and 12 to a question about an address, but it does make sense, when between $1150 and $1200 is the street price of marijuana, to assume that the conversation relates to the sale of marijuana.

     The hard information about the trips to Phoenix, Arizona, a source city for drugs, and the drug marijuana in particular, taken the previous day by co-conspirators, was corroborated by the "fingerprint" of the cell phone being in Arizona.

     In addition the overheard conversations back in Detroit confirm, albeit in coded language that was not very sophisticated or hidden, that drugs were on the way to the Plainview address, that multiple individuals were being directed to the Plainview address, that the drugs were being sold for $1150-$1200 per pound the street price for marijuana in Detroit. In addition, that cars

would back up the driveway which would enable surreptitious loading of the drugs, provides an additional incriminating fact.

Clearly, there was probable cause to believe that marijuana was going to be distributed at the Plainview address that morning, and the conduct of the visitors corroborated that probable cause. As the United States Court of Appeals for the Sixth Circuit noted recently:

> [T]he purpose of corroboration – not to necessarily corroborate every detail, but to increase the reliability of the information. See *Gates*, 462 U.S. 244-45 ("it is enough for purposes of assessing probable cause that 'corroboration through other sources of information reduce(s) the chances of a reckless or prevaricating tale' . . . .") *United States v. Bryant*, ___WL, (6th Cir. 04-5064) May 13, 2005 (unpublished opinion).

In this case, there was solid information picked up on the wiretaps, combined with corroborating of Arizona trips, surveillance and the Curry stop/seizure to provide probable cause.

While Agent Yon testified that the investigation began with tips from informants, the Government did not rely on the informant's information as a basis for the subsequent stops/seizures/arrests. Thus, the fact that the informant was not identified is of no relevance.

In addition, the information gained from the Title III intercepts, came from Defendants' voices, for the most part, rather than unidentified/unidentifiable individuals.

At the end of the day, the Government's Title III wiretap information, its surveillance and corroboration of the information, the suspicious activity occurring at the Plainview address, and the Curry seizure supports a finding of probable cause. There are specific and articulable facts, to justify the stops, searches, arrests, and seizures of the three instant Defendants under the Fourth Amendment. See *Draper v. United States*, 358 U.S. 307 (1959).

Accordingly, the Court DENIES the Motions to Suppress filed by Defendants William Worthy, Cedric Hardeman, and Rodney Puryear.

SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 18, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 18, 2005.

s/Jonie Parker
Case Manager